(No. 69035.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN BERNASCO, Appellee.

*Opinion filed October 18, 1990.*

350

Neil F. Hartigan, Attorney General, of Springfield, and William R. Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris and Matthew E. Franklin, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

William C. Evers III, of Collinsville, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

In the circuit court of Madison County, the 17-year-old defendant, Brian Bernasco, was charged by information with two counts of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3). That court suppressed his

confession, finding that, though the confession was not coerced or otherwise the product of improper police conduct, and though the confession was preceded by *Miranda* warnings (see *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), defendant's intelligence level was so low that his *Miranda* waiver and his confession were neither voluntary nor knowing.

The appellate court affirmed. (185 Ill. App. 3d 480.) The appellate court held that, even though defendant's *Miranda* waiver and confession were voluntary within the meaning of the fifth and fourteenth amendments (U.S. Const., amends. V, XIV; see *Colorado v. Connelly* (1986), 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515), his *Miranda* waiver was invalid because, as the trial court found, it was not knowing and intelligent (see *Moran v. Burbine* (1986), 475 U.S. 412, 421, 89 L. Ed. 2d 410, 421, 106 S. Ct. 1135, 1141; *People v. Turner* (1973), 56 Ill. 2d 201, 205-07). (185 Ill. App. 3d at 490.) The appellate court acknowledged that in given cases the confessions of subnormally intelligent defendants have been held admissible, but the court observed that the question of intelligent waiver is a factual one that may depend in part on such circumstances as a defendant's background and conduct. The appellate court concluded that the trial court's finding in the present cause was not against the manifest weight of the evidence. We then allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)) and now affirm.

The chief issue is whether a valid *Miranda* waiver must be knowing and intelligent in addition to being free from coercion or other misconduct. The secondary issue is whether the trial court's finding, that defendant did not knowingly and intelligently waive his *Miranda* rights or confess, was in accord with the manifest weight of the evidence.

The facts of this cause were fully set forth in the appellate court's opinion. We will refer to them as necessary. Briefly, defendant was of subnormal intelligence and was questioned by police outside his father's presence and on the assumption that he could understand *Miranda* warnings. At trial, his father testified that defendant had left school in the ninth grade and had had no prior police experience. A psychologist testified that defendant could not understand certain *Miranda* terminology and that he would probably have agreed to almost anything said to him if doing so would end his interrogation. Defendant testified that he had not been paying attention to his *Miranda* waiver form, had not understood it, and had been scared.

I

The State contends that, in *Colorado v. Connelly* (1986), 479 U.S. 157, 93 L. Ed. 2d 473, 107 S. Ct. 515, the Supreme Court decisively rejected the theory on which the appellate court relied and for which defendant argues: that a *Miranda* waiver and resulting confession must be knowing and intelligent as well as constitutionally "voluntary" in order to be admissible. In turn, the appellate court and defendant rest their view on *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135. We hold that the State's contention is not supported by *Connelly* and that *Burbine*'s requirement of intelligent knowledge as well as of voluntariness continues to be the law.

*Connelly* involved a defendant who, while mentally ill, had confessed to a murder. He had first confessed spontaneously upon approaching a police officer in the street. He had then confessed twice more after being given *Miranda* warnings. No improper police coercion had accompanied his confessions.

The Colorado Supreme Court held that, as a matter of due process, voluntariness required that the first, spontaneous confession have been "the product of a rational intellect and a free will," regardless of whether there had been improper coercion; that, despite any lack of official coercive origin, the confession's very admission into evidence would have constituted State action implicating the fourteenth amendment's due process clause; and that, because of evidence that the defendant had been suffering from a serious mental disorder, the trial court correctly found that he had lacked a rational intellect and free will and that the confession had thus been involuntary. (*People v. Connelly* (Colo. 1985), 702 P.2d 722, 728-29.) As for the subsequent confessions, the Colorado Supreme Court likewise held that, because of the evidence of the defendant's mental condition, the trial court correctly concluded that the State had failed to prove clearly and convincingly that the defendant's attempted waivers of *Miranda* rights were free and intelligent so as to be voluntary and thus effective. *People v. Connelly*, 702 P.2d at 729.

On review, the United States Supreme Court held that, in order to satisfy the fourteenth amendment's due process requirements as to voluntariness, it is sufficient that a confession not be causally related to coercive police conduct. (*Colorado v. Connelly*, 479 U.S. at 167, 93 L. Ed. 2d at 484, 107 S. Ct. at 522.) The Court rejected any conclusion that, "by itself and apart from its relation to official coercion," a defendant's mental condition might determine constitutional voluntariness. (*Connelly*, 479 U.S. at 164, 93 L. Ed. 2d at 482, 107 S. Ct. at 520.) Accordingly, any voluntariness inquiries into a confessing defendant's state of mind, "inquiries quite divorced from any coercion brought to bear on the defendant by the State," should be left for resolution by State evidence rules pertaining to reliability; such matters are not gov-

erned by the fourteenth amendment's due process clause. *Connelly*, 479 U.S. at 166-67, 93 L. Ed. 2d at 484, 107 S. Ct. at 522.

The *Connelly* Court explained that it was reversing the Colorado judgment in its entirety because the Court believed that the judgment's underlying analysis had been influenced by an erroneous view of constitutional voluntariness requirements. However, the Court explicitly noted that, on remand, the Colorado court could reconsider other issues not inconsistent with the Federal opinion (*Connelly*, 479 U.S. at 171 n.4, 93 L. Ed. 2d at 487 n.4, 107 S. Ct. at 524 n.4)—issues that apparently could include the separate question whether defendant's *Miranda* waivers had been intelligent and knowing (see *Connelly*, 479 U.S. at 184 n.5, 93 L. Ed. 2d at 495 n.5, 107 S. Ct. at 531 n.5 (Brennan, J., joined by Marshall, J., dissenting)).

Though it is clear from the *Connelly* majority opinion and the cited dissent that a confession, made after a *Miranda* waiver, might still be suppressed on grounds that *Miranda*'s protections had not been intelligently and knowingly waived, it is not perfectly clear from the *Connelly* majority opinion whether such suppression would have a constitutional basis. Nevertheless, defendant would ground suppression in the constitutional jurisprudence of *Burbine*, and we agree that *Burbine* has continuing vitality in this regard.

According to *Burbine*, an inquiry into *Miranda* waiver has "two distinct dimensions": (1) whether there was a free, uncoerced choice and (2) whether there was awareness of the right and the consequences of abandoning it. (*Burbine*, 475 U.S. at 421, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141; accord *Colorado v. Spring* (1987), 479 U.S. 564, 573, 93 L. Ed. 2d 954, 965, 107 S. Ct. 851, 857.) A valid *Miranda* waiver would thus require "*both* an uncoerced choice *and* the requisite level of com-

prehension." (Emphasis added.) (*Burbine*, 475 U.S. at 421, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141.) *Burbine* traced its requirements of voluntariness and intelligent knowledge to *Miranda* itself and beyond. *Burbine*, 475 U.S. at 421, 89 L. Ed. 2d at 420-21, 106 S. Ct. at 1140-41 (" 'provided the waiver is made voluntarily, knowingly and intelligently' "), quoting *Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612.

In *Burbine*, the police had failed to inform the respondent that an attorney, whom the respondent's sister had attempted to retain for him, had telephoned the police less than an hour before the respondent's interrogation and had been told by the police that the respondent would not be interrogated until the next day. (*Burbine*, 475 U.S. at 415-17, 89 L. Ed. 2d at 417-18, 106 S. Ct. at 1138-39.) The Court found no doubt about the respondent's "comprehension of the full panoply of [*Miranda*] rights *** and of the potential consequences of a decision to relinquish them." (*Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141.) The Court, viewing *Miranda* as establishing protections against the "compulsion inherent in custodial interrogation," reaffirmed that "full comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process." (*Burbine*, 475 U.S. at 425, 427, 89 L. Ed. 2d at 423, 424, 106 S. Ct. at 1143, 1144.) The unethical failure to inform the respondent of the attorney's call did not deprive him of "knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." (*Burbine*, 475 U.S. at 423-24, 89 L. Ed. 2d at 422, 106 S. Ct. at 1142.) Accordingly, "[b]ecause respondent's voluntary decision to speak was made with full awareness and comprehension of all the information *Miranda* requires the police to convey," his

*Miranda* waivers were valid. *Burbine,* 475 U.S. at 424, 89 L. Ed. 2d at 422, 106 S. Ct. at 1142.

In arguable contrast to the twin *Burbine*-recognized requirements of voluntariness and intelligent knowledge for *Miranda* waivers, the *Connelly* Court initially declared with seeming breadth that admissibility of a confession by a defendant whose mental state interfered with " 'rational intellect' " and " 'free will' " is to be governed by State evidence rules "rather than by our previous decisions regarding coerced confessions and *Miranda* waivers." (*Connelly,* 479 U.S. at 159, 93 L. Ed. 2d at 479, 107 S. Ct. at 518.) *Burbine* was a previous decision regarding *Miranda* waivers, albeit one announced only nine months before.

However, *Connelly* merely means that, in general, issues of intelligent knowledge are separate from issues of voluntariness. The *Connelly* opinion was actually addressing (1) an initial confession given under circumstances requiring no *Miranda* warning (hence involving no question of waiver), the voluntariness of the confession being at issue, and (2) subsequent confessions given after *Miranda* warnings, the voluntariness of the *Miranda* waivers being at issue. Thus—in a narrower vein than that in which the opinion's opening sentences might cursorily be read—the Court continued that, *in determining whether a confession is voluntary* where there has been no official coercion, inquiries into the state of a confessing defendant's mind, when "divorced from any coercion *** by the State," are to be resolved by State evidence law rather than by the due process clause of the fourteenth amendment. (*Connelly,* 479 U.S. at 166-67, 93 L. Ed. 2d at 484, 107 S. Ct. at 522.) Likewise, *in determining whether a Miranda waiver is voluntary,* a court is to consider the presence or absence of coercion emanating from official sources, not coercion that is of unofficial origin or that flows merely from a

defendant's psychological peculiarities. *Connelly*, 479 U.S. at 170-71, 93 L. Ed. 2d at 486-87, 107 S. Ct. at 523-24.

We observe that at no point did the *Connelly* Court overrule *Burbine*'s and other cases' requirement that a *Miranda* waiver be intelligent and knowing as well as voluntary. The *Connelly* opinion analyzed merely the constitutional voluntariness component of a confession's admissibility and of a waiver's validity. *Connelly*, 479 U.S. at 167, 170, 93 L. Ed. 2d at 484, 486, 107 S. Ct. at 522, 523 (citing, *inter alia, Burbine*).

Thus, from a Federal constitutional viewpoint, only voluntariness, rather than intelligent knowledge, ordinarily need be shown in the case of a confession (such as the *Connelly* respondent's first one) that is given under circumstances not requiring a *Miranda* warning. But, where a defendant confesses after being given *Miranda* warnings (as in the case of the subsequent *Connelly* confessions), both intelligent knowledge and voluntariness remain requirements for assuring that a defendant's *Miranda* waiver reflects *Miranda*'s "carefully drawn approach": its "subtle balance" between the need for police questioning and the coercive pressures inherent in such questioning. See *Burbine*, 475 U.S. at 426-27, 89 L. Ed. 2d at 424, 106 S. Ct. at 1143-44.

This understanding of *Connelly* and *Burbine* has been confirmed by later decisions. (See *Colorado v. Spring* (1987), 479 U.S. 564, 572, 93 L. Ed. 2d 954, 965, 107 S. Ct. 851, 857 (*Miranda* waiver must be made " 'voluntarily, knowingly and intelligently' "); *cf. Illinois v. Perkins* (1990), 496 U.S. ___, 110 L. Ed. 2d 243, 110 S. Ct. 2394 (where murder confession was obtained deceptively by undercover "cellmate" prior to any need for *Miranda* warning on murder charge, and thus no *Miranda* waiver question existed, sole self-incrimination issue was voluntariness in sense of absence of coercion; intelligent

358

knowledge not issue where no *Miranda* waiver question presented); *Michigan v. Harvey* (1990), 494 U.S. 344, ___, 108 L. Ed. 2d 293, 301, 110 S. Ct. 1176, 1179 (waiver of right of counsel under sixth amendment must be voluntary, knowing, and intelligent; equivalent of *Miranda* warnings generally suffices to establish knowing and intelligent waiver of sixth amendment right during post-indictment questioning); *Patterson v. Illinois* (1988), 487 U.S. 285, 292 & n.4, 101 L. Ed. 2d 261, 272 & n.4, 108 S. Ct. 2389, 2394 & n.4 (whether *Miranda* waiver also waived right to counsel under sixth amendment during subsequent post-indictment questioning depended on whether *Miranda* waiver was both voluntary and "knowing and intelligent").) Commentators support this understanding. See Benner, *Requiem for Miranda: The Rehnquist Court's Voluntariness Doctrine in Historical Perspective*, 67 Wash. U.L.Q. 59, 143-47 & n.383 (1989) (criticizing perceived retreat from *Miranda* but implicitly recognizing that *Connelly* left intelligent-knowledge waiver requirement intact); Berger, *Compromise and Continuity: Miranda Waivers, Confession Admissibility, and the Retention of Interrogation Protections*, 49 U. Pitt. L. Rev. 1007, 1018-19, 1042-54 (1988) (intelligent knowledge remains separate *Miranda* waiver requirement in addition to voluntariness); Note, *Constitutional Protection of Confessions Made by Mentally Retarded Defendants*, 14 Am. J.L. Med. 431, 433-36, 448-58 (1989) (probably after *Connelly*, but certainly after *Patterson*, intelligent knowledge remains separate *Miranda* waiver requirement); Note, *Colorado v. Connelly: The Demise of Free Will as an Independent Basis for Finding a Confession Involuntary*, 33 Vill. L. Rev. 895, 907, 920-22 (1988) (intelligent knowledge is separate requirement).

There remains a world of difference between voluntariness and intelligent knowledge. It has been noted,

though to analytically different effect, that a mentally ill person may "confess" at length quite without external compulsion but not intelligently and knowingly, while a perfectly rational person on the torture rack may confess intelligently and knowingly but without free will. *People v. Kincaid* (1981), 87 Ill. 2d 107, 127-28 (Simon, J., dissenting) (issue on review was solely whether confession was "voluntary"; dissent discussed no distinction between lack of coercion and intelligent knowledge in terms of post-1986 *Burbine-Connelly* constitutional voluntariness doctrine but simply deemed both hypothetical confessions not "voluntary").

However, for Federal constitutional purposes, a distinction does need to be made between two types of awareness in interpreting the *Miranda*-derived waiver requirement of intelligent knowledge.

The first type of awareness involves "know[ing] and understand[ing] every possible consequence of a waiver of the Fifth Amendment privilege" (*Spring*, 479 U.S. at 574, 93 L. Ed. 2d at 966, 107 S. Ct. at 857), being "totally rational and properly motivated" when confessing (*Connelly*, 479 U.S. at 166, 93 L. Ed. 2d at 484, 107 S. Ct. at 521), or having all information that might be "useful" or that "might *** affec[t one's] decision to confess" (*Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141), such as a list of "all the possible subjects of questioning in advance of interrogation" (*Spring*, 479 U.S. at 577, 93 L. Ed. 2d at 968, 107 S. Ct. at 859). In the cited cases, the Supreme Court held that this mental state is not necessary for a valid *Miranda* waiver. The Constitution does not demand "that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights" (*Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141), and there is no Federal constitutional right to confess only when in pos-

session of information that "could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature" (*Spring*, 479 U.S. at 577, 93 L. Ed. 2d at 967, 107 S. Ct. at 859).

The second type of awareness involves simply being cognizant at all times of "the State's intention to use [one's] statements to secure a conviction" and of the fact that one can "stand mute and request a lawyer." (*Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 422, 106 S. Ct. at 1141.) The latter mental state is what is held necessary for a valid *Miranda* waiver.

This second type of awareness has been elucidated more recently than *Connelly* and *Burbine* were decided. (See *Patterson v. Illinois* (1988), 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389.) As noted by the Supreme Court in interchangeably discussing a "knowing and intelligent" waiver of rights to counsel under the fifth and sixth amendments (U.S. Const., amends. V, VI), a waiver must reflect " 'an intentional relinquishment or abandonment of a known right or privilege' "; "the accused must 'kno[w] what he is doing' so that 'his choice is made with eyes open' "; the accused must have " 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Patterson*, 487 U.S. at 292, 101 L. Ed. 2d at 272, 108 S. Ct. at 2395.

In satisfying the latter formulation's "constitutional minimum," the *Patterson* Court found it sufficient under the sixth amendment that the petitioner had been aware of two points: (1) he had a right to consult with an attorney, to have an attorney present during questioning, and to have an attorney appointed if he could not afford to retain one privately; and (2) any statement that he made could be used against him in criminal proceedings, and an attorney's presence during questioning could serve him by affording him advice on making any statements.

(*Patterson*, 487 U.S. at 293, 101 L. Ed. 2d at 273, 108 S. Ct. at 2395.) Though *Patterson*'s waiver claim arose under the sixth amendment rather than the fifth, the Court noted that the awareness just described resembled the level of awareness found necessary in *Burbine*, adding that, for purposes of post-indictment questioning such as in *Patterson*, there is "a strong similarity between the level of knowledge a defendant must have to waive his Fifth Amendment right to counsel, and the protection accorded to Sixth Amendment rights." (*Patterson*, 487 U.S. at 297, 299 n.12, 101 L. Ed. 2d at 275, 276 n.12, 108 S. Ct. at 2397, 2398 n.12; accord *Michigan v. Harvey* (1990), 494 U.S. 344, ____, 108 L. Ed. 2d 293, 301, 110 S. Ct. 1176, 1179.) It is therefore clear from *Miranda* and its progeny, including *Patterson*, that this second type of awareness on a defendant's part is necessary in order to constitute the intelligent knowledge that in turn is required for blunting the coercive effects of police interrogation in a *Miranda* waiver context.

The foregoing review of intelligent-knowledge waiver doctrine is a key to harmonizing *Connelly* with *Burbine*. It also aids in deciding the present cause.

The trial judge in the present cause found that defendant had no prior criminal experience and had a beginning fourth-grade reading and comprehension level that prevented him from "understand[ing] what was happening here and *** hav[ing] a knowing understanding of what was happening," so that he could not effectively waive his *Miranda* rights "without the aid of his parents or someone who would assist him in translating what was really happening." In other words, as the trial judge found, "because of [defendant's] station in life, because of the circumstances surrounding the situation, he was unable to form a necessary intent to knowingly waive his rights." (The parties agree that defendant's fa-

ther was not present at defendant's interrogation; the father testified that the police refused him permission to be present, and the trial judge so found.)

The trial judge had heard testimony from a school psychologist that defendant's measured intelligence quotient placed him at the bottom of the slow-learner, low-average range. The psychologist testified that such persons "need to go over things time and time again in order to assimilate the same material than [sic] a student who functions in the normal range of intelligence." The psychologist also testified that defendant probably would not have understood the terms "interrogate," "court-appointed attorney," "intimidation," "immunity," and "waiver" but that he would have agreed "to most everything that was said to him to get himself out of the situation." (The terms "a lawyer appointed for me," "waiver," "immunity," and "intimidated" are contained in the waiver form signed by defendant.)

On cross-examination, the psychologist testified that defendant probably had an idea what a lawyer is, though he would not be able to give a very specific, accurate definition; that defendant understood the terms "silent," "I do not have to talk with any Collinsville Police Officer unless I want to," and "I know that I can refuse to answer any questions," all of which appeared on his waiver form; but that he would have some difficulty with the word "statements" in the form's phrase "stop giving any statements any time." On redirect examination, the psychologist also testified that defendant might be confused by the term "legal rights" and would probably refer to "right" in opposition to "wrong."

In his written order, the trial judge found that, based on his observations of defendant during direct testimony, defendant had substantial difficulty in understanding relatively routine questions, was limited in his comprehension of single words, and was substantially unable to un-

derstand relatively simple concepts. The order also recited that the trial judge was convinced from the psychological testimony that defendant would have agreed to and signed almost anything given him during interrogation.

Though the trial judge erred in finding that defendant's confession was not voluntary in the Federal constitutional sense, his findings provide ample support for concluding that defendant's *Miranda* waiver was not knowing and intelligent.

If intelligent knowledge in the *Miranda* context means anything, it means the ability to understand the very words used in the warnings. It need not mean the ability to understand far-reaching legal and strategic effects of waiving one's rights, or to appreciate how widely or deeply an interrogation may probe, or to withstand the influence of stress or fancy; but to waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail. Here, defendant was found not to understand fundamental terms contained in the *Miranda* warnings of his rights, not to have been able to form an intent to waive those rights, and not to have a normal ability to understand questions and concepts. Such findings, if borne out by the evidence, are sufficient to warrant the conclusion that defendant did not waive his *Miranda* rights knowingly and intelligently, and hence to justify suppressing his confession. See Note, *Constitutional Protection of Confessions Made by Mentally Retarded Defendants*, 14 Am. J.L. Med. 431, 432-33, 440-44 (1989) (discussing mentally retarded persons' limited intellectual ability to make knowing and intelligent *Miranda* waivers); *cf.* Holtz, *Miranda in a Juvenile Setting: A Child's Right to Silence*, 78 J. Crim. L. & Criminology 534, 536-37, 546-56 (1987) (citing evidence that most youths lack proper comprehension of

rights under police interrogation; proposing use of simplified version of *Miranda* warnings); Note, *Now My Son, You Are a Man: The Judicial Response to Uncounseled Waivers of Miranda Rights by Juveniles in Pennsylvania*, 92 Dick. L. Rev. 153, 168-71, 175-84 (1987) (discussing factors judicially and scientifically found to bear on waiver competence of arrestees under age 18).

Our own prior cases lend further weight to today's holding. We have repeatedly analyzed *Miranda* waivers with regard to whether they were *both* voluntary *and* knowing and intelligent. For example, we recently did so in *People v. Reid* (1990), 136 Ill. 2d 27, 51-52, 54-56, a case bearing some factual resemblance to the present one. Though we held there that the trial court's denial of a motion to suppress a confession was not against the manifest weight of the evidence (*Reid*, 136 Ill. 2d at 59-60), we were conscious of our responsibility to show deference to the findings of a trial court that had assessed credibility, demeanor, and the relevant facts—a responsibility we likewise have now, given the trial court's decision to suppress defendant's confession in the present cause. (See *People v. Rogers* (1988), 123 Ill. 2d 487, 495.) The *Reid* result is also distinguishable in that the mother of the 15-year-old subnormally intelligent defendant had been present with him and thus available to explain events to him during his interrogation, even though she was not an attorney. *Reid*, 136 Ill. 2d at 46, 58-59.

Among additional cases in which this court recognized that a *Miranda* waiver must be knowing and intelligent as well as voluntary were *People v. Evans* (1988), 125 Ill. 2d 50, 74; *People v. Rogers*, 123 Ill. 2d at 494-500; *People v. St. Pierre* (1988), 122 Ill. 2d 95, 110-13; *People v. Thompkins* (1988), 121 Ill. 2d 401, 433-34; *People v. Murphy* (1978), 72 Ill. 2d 421, 437; *People v. Medina* (1978), 71 Ill. 2d 254, 258-59, 263; and *People v.*

*Turner* (1973), 56 Ill. 2d 201, 205-07. See also *People v. Aldridge* (1980), 79 Ill. 2d 87 (presuming that right of counsel under sixth amendment was involved, but analyzing issue in terms of voluntary and knowing waiver following fifth-amendment *Miranda* warnings); *People v. Wipfler* (1977), 68 Ill. 2d 158, 171-72 (treating both non-coercion and intelligent knowledge as components of voluntariness).

Independently of *Miranda* and its Federal voluntariness principles, Illinois courts have long held that, to be admissible, a confession must be "voluntary" in a State-law sense and that a defendant's mental ability, familiarity with the English language, age, education, and experience are among factors to be weighed in determining from the totality of the circumstances whether a confession or waiver of rights is "voluntary" in that sense. (See *People v. Turner*, 56 Ill. 2d at 206; *People v. Hester* (1968), 39 Ill. 2d 489, 497-98; *People v. Cocroft* (1967), 37 Ill. 2d 19, 22; *People v. Earl* (1966), 34 Ill. 2d 11, 15.) (Insanity is treated as a categorical exception; under Illinois law, the confession of an insane person is involuntary *per se.* (*People v. Lambersky* (1951), 410 Ill. 451, 455; *cf.* 33 Vill. L. Rev. at 903-05 (collecting similar State and pre-*Connelly* Federal holdings).)) In their holdings under State law, Illinois courts in effect have treated intelligent knowledge as one component of a confession's overall voluntariness, rather than as an admissibility criterion separate from voluntariness as in *Miranda* waiver law. (See also Ill. Rev. Stat. 1989, ch. 38, par. 114—11 (governing motions to suppress confessions as involuntary).) The line of *Miranda* cases represented by *Burbine, Connelly, Spring,* and *Patterson* has now seemingly settled, for Federal constitutional purposes, that voluntariness and intelligent knowledge are separate questions; however, for purposes of our own evidence law they are interrelated. Still, at this point we

need not further consider how or whether our own State's common, statutory, or constitutional law would bear on the issues before us, because the parties have not raised such questions, and because Federal constitutional principles by themselves are sufficient to inform our present judgment.

In the latter connection, we note the State's argument that Supreme Court cases cited by defendant as supporting a separate admissibility requirement of intelligent knowledge are explainable by whether police misconduct was present of which a defendant was aware. (See *Patterson*, 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389; *Spring*, 479 U.S. 564, 93 L. Ed. 2d 954, 107 S. Ct. 851; *Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135; *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490.) The State says that when either there was no such misconduct (*Spring* and *Patterson*) or a defendant was unaware of such misconduct and it had no effect on him (*Burbine*), defendants' statements were found admissible. The State concludes that, since no police misconduct occurred here, the cases cited by defendant support admitting his confession, not suppressing it.

The enunciation of *Miranda* principles in *Patterson*, *Spring*, and *Burbine*, which we have already discussed, survives the State's attempt to interpret those cases factually. All three cases clearly require that a *Miranda* waiver be both constitutionally voluntary and a decision taken knowingly and intelligently. In further response to the State's contention, we emulate the tone though not the substance of a separate opinion in *Connelly*, 479 U.S. at 177-78, 93 L. Ed. 2d at 491, 107 S. Ct. at 527-28 (Brennan, J., joined by Marshall, J., dissenting):

While it is true that no police misconduct discernible by a defendant had occurred when statements were held admissible in *Patterson*, *Spring*, and *Burbine*, it is also

true that in those cases the Court explicitly and at least as significantly recognized that the statements followed knowing and intelligent waivers of rights. See *Patterson*, 487 U.S. at 292, 300, 101 L. Ed. 2d at 272, 277, 108 S. Ct. at 2394, 2399 ("the specific issue posed here is whether [defendant's] waiver was a 'knowing and intelligent' waiver"; "Because we believe that [defendant's] waiver *** was 'knowing and intelligent,' we find no error"); *Spring*, 479 U.S. at 573-75, 93 L. Ed. 2d at 965-66, 107 S. Ct. at 857-58 (no allegation of coercion; no allegation that defendant failed to understand that he could remain silent and that anything said could be used against him; waiver was "indisputably" made "knowingly and intelligently"); *Burbine*, 475 U.S. at 421-24, 89 L. Ed. 2d at 421-22, 106 S. Ct. at 1141-42 (voluntariness of waiver not at issue; no question about comprehension of rights; police misconduct in failing to tell defendant about attorney's telephone call could not have affected his intelligence and voluntariness in waiving *Miranda* rights).

The fact that defendants in *Patterson*, *Spring*, *Burbine*, and the present case were all conscious of no police misconduct signifies only that, in regard to whether the intelligent-knowledge *Miranda* waiver element existed, this would be a case of first impression. Arguably unlike the present defendant, the defendants in the cited cases understood their *Miranda* waivers and the effects of their statements. Whether defendant knowingly and intelligently waived his *Miranda* rights and gave his confession remains the key factual question here.

## II

We now turn to the question whether the manifest weight of the evidence contradicts the trial court's finding that defendant did not waive his *Miranda* rights or give his confession knowingly and intelligently.

We do not sit to reweigh the evidence as if we were a trial court; a reviewing court will not disturb a trial court's determination on a motion to suppress evidence unless it is against the manifest weight of the evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162.) Whether a defendant intelligently waived his right to counsel depends, in each case, on the particular facts and circumstances of that case, including the defendant's background, experience, and conduct. (*People v. Turner* (1973), 56 Ill. 2d 201, 205-06.) The trial court here reached its conclusion after hearing police, parental, and psychological testimony and—what is very significant—making its own observations of defendant while he was testifying.

The State argues that defendant could read his confession aloud and that he told the police and they believed that he understood his rights. The State further argues that defendant understood that he did not have to speak with police and that he understood what a lawyer was. The State cites numerous cases, most of them noted in the appellate court's opinion (185 Ill. App. 3d at 495), in which the confessions of defendants with low intelligence and little education have been held admissible. The majority of the cases cited by the State can easily be distinguished on the facts of the defendants' backgrounds and trials. In any event, as the appellate court wrote, "[t]hese decisions can offer little support for the State's position *** since the validity of a waiver of rights is essentially a question of fact." (185 Ill. App. 3d at 495.) The State has not persuasively demonstrated that the trial court manifestly erred when it found, based on the facts and circumstances of this cause, that defendant did not knowingly and intelligently waive his *Miranda* rights or give his confession.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*