THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY EYMAN, Defendant-Appellant.

Third District   No. 3—90—0852

Opinion filed December 30, 1991.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Robert M. Hansen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

Randy Eyman was convicted at a jury trial of armed violence, predicated on the charge of aggravated battery. He was sentenced to 12 years' imprisonment and now appeals. We affirm.

On May 7, 1989, around 9:30 p.m., someone fired several shots into a house at 522 Irving in Joliet. At that time, 10-year-old Amy Sanchez was sitting in the living room of that house watching television. One of the bullets struck Amy in the head, causing serious injury.

A police investigation revealed that the house had been struck by five shots from a .25 caliber weapon. Bullet holes were found in the

following locations: one in the front door which was caused by the bullet which struck Amy, one in the east front window, one in the west front window, and two in the aluminum siding on the front of the house. According to an expert witness for the defense, the paths of the bullets indicated that the shooter had been standing across the street from the house, approximately 105 feet away.

The house is located close to the line which divides two rival street gangs' (the Latin Kings and the Two Sixers) territory, but is in Latin Kings' territory. The defendant, who was 16 years old at the time, is a member of the Latin Kings.

Erasmo "Eddie" Delacruz is a cousin of Amy Sanchez. At the time of the shooting, he was a member of the Two Sixers. About a week prior to the shooting, Delacruz had stayed overnight at 522 Irving.

On July 10, 1989, approximately two months after the Sanchez shooting, Delacruz was sitting in the driveway of fellow gang member Michael Rideout's house in Two Sixer territory. Rideout's sister, Julie, was also present.

About 1:30 p.m., Delacruz shouted derogatory comments at a passing car because the occupants were Latin Kings. A little while later, the car returned. As the car drove by, several shots were fired from it towards Delacruz and the Rideouts. In a subsequent photographic lineup, Delacruz identified Eyman as one of the shooters. Delacruz had never seen Eyman prior to July 10. Julie Rideout placed Eyman in the car but said that she did not see him fire a gun. Delacruz and Rideout did both agree that Eyman was in the back seat of the car.

On July 14, 1989, the Joliet police asked the defendant's mother to bring him to the police station for questioning. At the defendant's request, the defendant's mother was not present during the actual interrogation. Defendant was read his *Miranda* rights. He stated that he understood those rights and would talk with the police. During the interrogation, defendant admitted to being in the car when the shots were fired but denied being the shooter.

Later during the questioning, the police questioned Eyman about the Sanchez shooting. He initially denied involvement. Eventually, he gave a taped statement in which he admitted firing three shots at the house because he was after Delacruz.

It was for the Sanchez shooting that Eyman was charged with armed violence. The State alleged that Eyman, while armed with a handgun, committed aggravated battery by knowingly shooting Amy Sanchez and causing great bodily harm. (Ill. Rev. Stat. 1989, ch. 38,

pars. 12—4(a), 33A—2.) Despite being a minor at the time of the incident, Eyman was tried as an adult. Ill. Rev. Stat. 1989, ch. 37, par. 805—4(3).

Prior to trial, the defendant moved to suppress his statement to the police on the grounds that he was of below-average intelligence and that his statement was coerced and involuntary. After a hearing, the court denied that motion.

The defense also moved *in limine* to preclude evidence of the defendant's alleged participation in the July 10 shooting. The court also denied that motion.

At trial, the defendant claimed to have been several blocks away from 522 Irving when the shots were fired. Eyman presented several alibi witnesses who claimed to be with him at the time of the Sanchez shooting. However, evidence also showed that the place he claimed to be was close to 522 Irving and that he could readily have left, fired the shots and then returned to his friends within a period of a few minutes. Eyman also denied shooting at Delacruz on July 10, although he again admitted to being in the car.

During the examination of an alibi witness, the defense attempted to elicit testimony about a phone conversation between Eyman and Pete Davilla, arguing that it was admissible as a statement against Davilla's interest. Davilla was also a member of the Latin Kings and had been seen near 522 Irving around the time of the shooting. The judge did not allow the testimony. According to an offer of proof, two witnesses would testify that they overheard Davilla talking on the phone with Eyman in September 1989. Davilla reportedly told Eyman, who was in the county jail at the time, to "take the fall" for Davilla.

The jury returned a guilty verdict and the court entered judgment on the verdict.

At the sentencing hearing, the defense presented the testimony of Dr. Lawrence Egal, a licensed psychologist, as evidence in mitigation. Dr. Egal testified that Eyman was mentally retarded under the definition contained in the Criminal Code of 1961 and had an IQ of 72.

The defense also used Dr. Egal's testimony to support a post-trial motion. The defense claimed that the defendant's psychological problems were so severe that he could not have understood or knowingly waived his *Miranda* rights. Thus, his inculpatory statement to the police should have been suppressed. According to the defense, Dr. Egal's testimony constituted newly discovered evidence which warranted a reopening of the suppression hearing and also a new trial.

After a hearing at which Dr. Egal testified further, the trial court denied the motion. This appeal followed.

The defendant first argues that his mental deficiency made him unable to appreciate his rights and correspondingly unable to validly waive them. Following Dr. Egal's testimony at the post-trial hearing, the trial court stated that defense counsel had known from the outset that Eyman was mentally slow and thus Egal's testimony was merely cumulative of testimony presented at the suppression hearing.

In *People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958, the supreme court held that a valid *Miranda* waiver must be knowing and intelligent in addition to being voluntary and free from coercion. There, the trial court had suppressed the statement of a 17-year-old boy who had dropped out of school in the ninth grade, had a fourth-grade reading level, and who had no prior police experience. The trial court reached its conclusion "after hearing police, parental, and psychological testimony and—what is very significant—making its own observations of defendant while he was testifying." (138 Ill. 2d at 368, 562 N.E.2d at 966.) Both the appellate court and the supreme court affirmed. The supreme court noted that the validity of a waiver is essentially a question of fact which will not be overturned unless it is manifestly erroneous.

Under the same standard, the opposite result was reached in *People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174. There, after hearing similar testimony and arguments, the trial court denied the motion to suppress. The supreme court affirmed, again noting a deference to the trial judge who was in the best position to determine the issue.

At the initial suppression hearing, Eyman's mother had testified that he was very slow mentally and was in special education. She also stated that he had been to a psychologist who had determined that he had the IQ of a third-grader. Furthermore, at the hearing, the court heard testimony by several police officers who had interacted with the defendant. Most importantly, the judge was able to listen to and watch Eyman testify at trial in order to assess the defendant's demeanor and credibility. The judge stated that he found Eyman able to understand the questions and the purpose of the questions and relate answers and concepts. In addition, Eyman, unlike Bernasco or Reid, had prior police experience. The record indicates that he had been read his *Miranda* rights on at least three prior occasions.

■ Determining whether a valid waiver occurred involves examining the circumstances of each case, including the defendant's background, experience and conduct. (*Bernasco*, 138 Ill. 2d at 368, 562

N.E.2d at 966.) Eyman had had prior police contact in 1989. At the time of the trial, Eyman was in the eleventh grade, albeit in special education. The presentence report indicates that his academic work was more than satisfactory. He was also given the opportunity to have his mother present during the questioning, but declined.

The trial judge was in the best position to determine Eyman's mental ability. Here, as in *Bernasco* and *Reid,* the court had the benefit of police and parental testimony in addition to being able to directly observe the defendant. It was brought out at the suppression hearing that a psychologist had already determined that Eyman had subnormal intelligence. The trial judge found that Dr. Egal's opinion added nothing that had not already been considered at the suppression hearing. Accordingly, he ruled that the testimony did not constitute newly discovered evidence and thus did not justify either reopening the suppression hearing or holding a new trial. His decision is not against the manifest weight of the evidence.

The defendant argues in the alternative that if the evidence is not "newly discovered" evidence, then he was denied effective assistance of counsel by his attorney's failure to raise this at the suppression hearing. Given the trial court's finding that this evidence was cumulative, the defendant was not given ineffective assistance, as it would have not changed the result of that hearing.

■ Eyman's next contention is that the trial court erred in allowing evidence of the July 10, 1989, shooting. The trial court denied the defendant's motion *in limine* to exclude this evidence. The court ruled that evidence of the subsequent shooting was admissible because it was relevant to show the identity, intent, motive and knowledge of the person who injured Amy Sanchez and instructed the jury accordingly.

Defendant first argues that a proper foundation was not laid in that Eyman was not sufficiently shown to be the shooter in the second incident. In order for the evidence to be admissible, the prosecution need not prove the other crime beyond a reasonable doubt, but there must be more than a mere suspicion that the defendant engaged in the other criminal activity. *People v. Wolfbrandt* (1984), 127 Ill. App. 3d 836, 469 N.E.2d 305.

Here, that burden was met. Delacruz identified Eyman as one of the shooters. Another eyewitness placed Eyman in the car but did not see him shoot the gun. Eyman admitted that he was in the vehicle. Delacruz and Eyman were members of rival gangs. Although this is not proof beyond a reasonable doubt, it is more than mere suspicion,

especially in light of Eyman's statement to the police that he had a grudge against Delacruz. The prosecution laid a sufficient foundation.

Defendant next argues that, even if the foundation was solid, the evidence was irrelevant to show identity, intent, motive or knowledge.

Evidence of another crime may be used to show intent when the other crime has some threshold similarity to the crime charged. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) It is of no significance that the crime charged happened prior to the other crime. *Bartall*, 98 Ill. 2d at 312, 456 N.E.2d at 68.

The intent of whoever shot the house at 522 Irving was clearly an issue in the case. As discussed below, Eyman argues, that even if the evidence shows that he did the shooting, his conduct was no more than reckless. It was the State's theory that Eyman fired the shots with the intention of hitting Delacruz, who had recently been seen staying there. The two shootings are sufficiently similar. Both were unprovoked, gang-related shootings. Evidence of the July 10 shooting was relevant to establish that Eyman's intention was to hit Delacruz and was properly admitted for that purpose.

Evidence of the subsequent shooting also tended to show the motive of the defendant in firing at the house. Eyman had a professed dislike for Delacruz. Delacruz was a member of a rival gang and had allegedly shot at Eyman's friend some time in the past. Evidence of the defendant's later shooting at Delacruz showed malice toward Delacruz which could be probative of his motive in shooting at the house.

The knowledge of the defendant was also at issue in the case. Evidence concerning the absence of an innocent frame of mind would rebut the defendant's claim that at most he acted recklessly. Eyman knew that Delacruz had recently been seen at 522 Irving. He thought that by firing into the house, he might hit Delacruz. Therefore, evidence that defendant had participated in a later attack on Delacruz supports the State's theory that Eyman shot at the house, knowing that Delacruz may have been inside.

The question of admissibility of evidence is within the sound discretion of the trial judge and will not be overturned unless a clear abuse of discretion is shown. (*People v. Brown* (1990), 199 Ill. App. 3d 860, 557 N.E.2d 611.) The trial court did not abuse its discretion in admitting this testimony.

The defendant's next contention on appeal is that the trial court erred by not admitting into evidence certain hearsay statements. The defense attempted to introduce, through the testimony of Eyman and two alibi witnesses, evidence that Pete Davilla had made self-incriminatory statements. It was defendant's theory that Davilla was actu-

ally the one who shot Amy Sanchez and that Davilla's statements were admissible as declarations against interest.

■ There are four factors to look at when examining a statement for admission as declaration against penal interest: (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime; (2) whether it was corroborated by other evidence; (3) whether it was self-incriminating and against the declarant's interest; and (4) whether there was adequate opportunity to cross-examine the declarant. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.) These factors are to regarded simply as indicia of trustworthiness and not as requirements of admissibility. *People v. Bowel* (1986), 111 Ill. 2d 58, 488 N.E.2d 995.

Under this standard, the evidence was properly excluded. The statement was made four months after the shooting. There is no corroboration other than the fact that Davilla was seen in the area by Delacruz and was known to dislike Delacruz. The statement is extremely vague and not clearly against Davilla's interest. Davilla was not available at trial for cross-examination.

Furthermore, there are no other factors which might tend to show this hearsay's reliability. Although Eyman sought to testify to the conversation, the other witnesses were not parties to the conversation, a factor noted by the *Bowel* court in determining reliability. (111 Ill. 2d at 68, 488 N.E.2d at 1000.) Instead these witnesses simply overheard one end of a telephone conversation while Davilla was at a party. One witness who heard it was 15 feet away. The distance to the other witness is unknown. This statement contains no indicia of trustworthiness sufficient to overcome its hearsay nature. The trial court did not abuse its discretion in excluding this testimony.

Defendant's final contention is that his conviction should be reduced to reckless conduct. Defendant contends that, at most, the evidence showed that he acted recklessly. The jury was instructed on both armed violence and reckless conduct.

■ Aggravated battery (which was the predicate for the armed violence charge) requires intentional or knowing conduct by the offender. (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(a).) "A person *** acts knowingly *** when he is consciously aware that such result is practically certain to be caused by his conduct." Ill. Rev. Stat. 1989, ch. 38, par. 4—5(b).

In viewing the evidence in the light most favorable to the prosecution (*People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277), it cannot be said that the jury's verdict was wrong. Five shots were fired into the home by a stationary gunman from a distance of 105 feet. It

was 9:30 p.m. The house's exterior and interior lights were on. Delacruz had been seen in the area recently. This was Latin Kings turf, and Delacruz was a Two Sixer. Eyman told the police that he wanted to shoot Delacruz because Delacruz had at some time shot at the defendant's friend. The defendant confessed to police that he had fired the shots. It is a logical conclusion that when Eyman fired into the house, he did so with the intent of hitting Delacruz. Any intent which Eyman had towards injuring Delacruz would apply to the actual victim under the doctrine of transferred intent. *People v. Hickman* (1973), 9 Ill. App. 3d 39, 291 N.E.2d 523.

The jury was properly instructed on both reckless conduct and on armed violence. The jurors found that Eyman fired the shots with the intent to cause great bodily harm. When viewing the evidence in the light most favorable to the prosecution, it cannot be said that their conclusion was erroneous.

For the foregoing reasons, the Will County circuit court is affirmed.

Affirmed.

BARRY and McCUSKEY, JJ., concur.