THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. EPIFANIO TERAN-CRUZ, Defendant-Appellee.

First District (3rd Division)    No. 1—93—2134

Opinion filed May 17, 1995.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Judy DeAngelis, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:

Defendant, Epifanio Teran-Cruz, was indicted for first degree murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1) (now 720 ILCS 5/9—1(a)(1)

(West 1992))) and armed violence in violation of section 33A of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 33A (now 720 ILCS 5/33A (West 1992))). Prior to trial, defendant moved to suppress certain inculpatory statements he made following his arrest. The trial court granted defendant's motion. The State now appeals from the circuit court's order granting the motion to suppress pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)).

For the reasons which follow, we reverse and remand.

Defendant was charged with first degree murder for the stabbing death of Sabino Zamora-Lagunas on September 1, 1991. Prior to trial, defendant filed a motion to suppress statements made after his arrest in which he alleged that law enforcement officers failed to inform him of the right to remain silent and that anything he might say or do could be used against him. Defendant further alleged that he was incapable of appreciating and understanding the full meaning of his *Miranda* rights since, at the time of the interrogation, he was: suffering from the debilitating effects of injuries sustained to his head and body and the medication given to him for such injuries; lacking in education and familiarity with the American system of justice; and unable to speak the English language. For these reasons, defendant claimed that his statements were not the product of a free and rational choice, nor made voluntarily, knowingly and intelligently. Defendant also claimed that he was led to believe, and in fact did believe, that the law enforcement personnel who questioned him were attorneys there to represent him.

At the hearing on defendant's motion, the parties stipulated that on September 1, 1991, defendant was treated at Lutheran General Hospital in Park Ridge for blunt trauma to the head and abdomen and acute alcohol intoxication. It was also stipulated that defendant was released to police officers at about 4:30 p.m. on September 2, 1991, and at that time he was alert, responsive and ambulatory. Against this backdrop, the State presented the testimony of United States Immigration and Naturalization Service Agent Richard Matt, who was called by Prospect Heights Detective-Sergeant Eric Lundt to advise defendant of his constitutional rights in defendant's native language, Spanish.

Matt testified that he introduced himself to defendant, and after he ascertained that defendant could read Spanish, Matt showed him a copy of the *Miranda* warnings printed in Spanish and read them aloud. Defendant orally indicated his understanding of each right, then signed a form signifying that understanding and told Matt that he did not wish to speak to anyone right now. Matt communicated this to Lundt and the interview was terminated.

Lundt corroborated that sequence of events, testifying that defendant had been brought to the police station from the hospital and that Matt conducted a brief interview with defendant. After terminating the interview, defendant was transported to the Arlington Heights police station. Lundt also testified that on September 3, 1991, he contacted the felony review unit of the State's Attorney's office and met with Assistant State's Attorneys Kinnerk and Johnson. The three men then proceeded to the Arlington Heights police station, where Lundt spoke with Investigator Hernandez, an Arlington Heights police officer, who was born in the United States of Mexican parentage and who speaks Spanish. Lundt asked Hernandez to translate for Kinnerk and defendant in the interview which followed.

Lundt witnessed that interview and heard Hernandez interpret the *Miranda* warnings from a police union book being used by Kinnerk and saw him present defendant with a copy of those warnings printed in Spanish. He also saw defendant place his initials to the immediate left of each of the five warnings, sign at the bottom of the form, and print his name directly below his signature. Lundt and Hernandez then signed their names as witnesses.

During his testimony Lundt identified a mugshot photograph of defendant which showed that one of his eyes was discolored. Lundt stated, however, that defendant appeared normal during the interview and did not have any type of glazed look about his face. Lundt further testified that Hernandez never indicated that defendant wished to have an attorney present and that none of those involved in the interview process represented himself to defendant as his attorney.

Patrick Kinnerk testified that he is an assistant State's Attorney, who, on September 3, 1991, was assigned to the felony review unit. In that capacity he conducted an interview with defendant at the Arlington Heights police station about 4 p.m. Lundt, Johnson and Hernandez were present for that interview and Hernandez communicated Kinnerk's questions and statements to defendant in Spanish.

Kinnerk stated that when he initially introduced himself to defendant, he told him not to say anything to him, that he was an assistant State's Attorney who worked for Cook County and the police department, and that he was not his attorney. He then told defendant that he did not have to talk with anyone or to him personally, but that if he wanted to, he would talk with him. Defendant indicated, through Hernandez, that he wanted to talk with Kinnerk. At that point, Kinnerk told defendant that he would have to advise him of his rights again, and in response, defendant nodded and

pointed to Lundt. Kinnerk then advised defendant of his rights from the police union book, and defendant affirmatively indicated his understanding of each right as it was translated by Hernandez. At no time did defendant ask to speak to an attorney or say that he did not wish to speak with him.

During this interview Kinnerk noticed that defendant had a bruise on his face, and he asked him how he felt and other general questions about his well-being. Assured that defendant was not hungry or in need of attending to any physical concerns, Kinnerk proceeded to the subject matter of the investigation. Kinnerk found defendant alert and cooperative, but anxious in the sense that he wanted to know what was going to happen. Kinnerk testified that no threats or promises were made to defendant and that defendant did not indicate that he did not understand anything and that he never told defendant that he was his attorney or that he was there to represent him. On cross-examination, Kinnerk related that he had asked defendant his educational level and learned that he had gone to the third grade in Mexico. Kinnerk was aware that defendant had refused to be interviewed the day before and mentioned that fact to defendant when he spoke with him. At the end of the interview, defendant asked what would happen to him now.

Miguel Hernandez testified that he is a detective with the Arlington Heights police department, that he is fluent in Spanish, and has acted as an interpreter for the department for a number of years. Hernandez stated that on September 3, 1991, Lundt asked him to interpret an interview with a Spanish-speaking subject regarding a homicide. The interview took place with defendant at the Arlington Heights police department, and Hernandez' testimony mirrored that of Kinnerk with regard to the content of the interview and defendant's signing and initialling of the waiver form. This included Kinnerk's specific appraisal to defendant that Kinnerk was not defendant's attorney, that he was a Cook County State's Attorney. In making this introduction he used the words, "*abogado para el estado*," attorney from the State.

Hernandez further testified that after defendant indicated that he could read Spanish, Hernandez read the *Miranda* warnings and waiver which were typewritten in Spanish with defendant and felt that defendant was reading along with him. Defendant never indicated that he did not wish to speak with him, or that he wanted an attorney, and Hernandez never told defendant in Spanish that Kinnerk was defendant's attorney or that anyone else in the room was there to represent him. On cross-examination, Hernandez acknowledged that he is a police officer and that he was not a licensed or certified interpreter.

Judy Johnson testified that on September 3, 1991, she was employed as an assistant State's Attorney and was present at the interview with defendant as an observer. She corroborated the testimony of Hernandez, Kinnerk and Lundt regarding the procedure employed, and during the course of the interview she never heard defendant indicate that he wished to terminate the proceeding or request an attorney. Defendant appeared conscious, alert and responsive.

With that testimony, the State rested on the motion, and defense counsel moved for a directed finding. After argument, the trial court denied the motion concluding on the basis of the evidence considered in the light most favorable to the prosecution that nothing was shown to indicate that defendant was unable to understand and voluntarily waive his rights, or that he was laboring under any physical or mental impairment.

Defendant testified, through an interpreter, that he was 46 years old and was born in Mexico. He first came to the United States in 1985, returned to Mexico, then came back to this country in 1986. He also testified that he is married and has 10 children who are living in the two countries. Defendant stated that he does not speak English, that he went to school for three years in Mexico, and can read and write Spanish "a little bit."

Defendant recalled that he was arrested in the hospital on September 2, 1991, and taken into police custody. At that time, he was not feeling well; his stomach, head and face hurt from the injuries he had sustained in the incident. Defendant testified that he spoke briefly with police at the station, signed some papers, which he did not understand, and chose not to speak with them anymore. On the following day, when he was taken to an interview room in the Arlington Heights police station, he was still in pain.

At that time, people presented themselves as assistant State's Attorneys, who he thought were there to help him. This perception was based on his experience in a previous misdemeanor arrest situation when he was given a "State's Attorney." Defendant recalled signing papers during the interview, but he claimed that he did not understand what was in them.

Under cross-examination by the State, defendant revealed that he has lived in the Chicago area since his return from Mexico in 1986, and during that time he has worked in a factory, a restaurant, and for a landscaper. He acknowledged that he was paid for this work by check, but he claimed that he did not bank in the area or have a driver's license. He stated that he cashed his checks and sent the money to his family in Mexico.

Defendant also acknowledged the form which he signed on September 2, 1991, after his release from the hospital, and that he had told the police officers that he did not wish to speak with them any longer. He further acknowledged his signature on another document signed the following day, but not his initials, and he claimed that the content of this document had not been read to him when it was placed in front of him. Defendant did, however, recognize Lundt as a policeman.

Irma Villareal testified that she was born in Mexico, that Spanish is her native language, and that she is employed as an interpreter by the circuit court of Cook County. She also testified that the proper term in Spanish for prosecutor is *"fiscal,"* and that the proper term for State's Attorney in Spanish is *"procurador."* When asked to interpret the term *"abogado para el estado,"* Villareal indicated that it was closer in meaning to an attorney appointed by the State than a prosecutor.

The defense rested and the State called Hernandez in rebuttal. He indicated that he told defendant in Spanish that Kinnerk was an assistant State's Attorney for Cook County and that he worked for the police department.

Ms. Villareal was then asked to comment on the phrase of introduction related by Hernandez. She indicated that the words used could be interpreted as a lawyer that is given by the State or a lawyer from the State, to a defendant. She then related the Spanish term for public defender and stated that she had not heard that used by Hernandez, but interpreted the entire phrase used by Hernandez to indicate that Kinnerk was an assistant State's Attorney who was working for the police and not defendant's attorney. On re-cross-examination, Villareal acknowledged that she did not hear Hernandez use the words *"fiscal"* or *"procurador,"* which are the only two words that translate into State's Attorney or prosecutor in Spanish. Under examination by the court, she stated that the wording used by Hernandez did not tell defendant that Kinnerk was a prosecutor. On the other hand, it did not tell defendant that Kinnerk was his attorney either, and the context of the entire phrase indicated that Kinnerk was working against him.

At the close of evidence and argument, the trial court granted the defense motion to suppress. In doing so the court stated that the issue centered on the translation of what was told to defendant about the identity of the person to whom he gave the statement. The trial court found the translation of Kinnerk's identification of himself inadequate, that the definition of the phrase "State's Attorney" as given by Hernandez meant "Attorney of the State" or "Attorney

from the State" and did not connote a prosecutor at all. The trial court acknowledged the evidence showing that defendant had been told that Kinnerk was not his attorney; but also noted defendant's testimony that he thought these "State's Attorneys" were there to help him. Given the language barrier, defendant's lack of education and the mistranslation of some of the identifications and warnings here, the trial court concluded that the State had not sustained its burden of showing that defendant had given his statements to the prosecutor knowingly and understandingly with full awareness of what he had done.

On appeal, the State urges that the trial court improperly granted the motion to suppress defendant's confession as it proved that defendant was fully aware that Kinnerk was a prosecutor and not a public defender. We agree.

■ Where a defendant challenges the admissibility of his confession through a motion to suppress, the State has the burden of proving that the confession was voluntary by the preponderance of the evidence. (725 ILCS 5/114—11(d) (West 1992); *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223.) This includes proof that defendant made a knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. (*People v. Reid* (1990), 136 Ill. 2d 27, 554 N.E.2d 174; see also *People v. Bernasco* (1990), 138 Ill. 2d 349, 562 N.E.2d 958.) This determination is made from the totality of the circumstances, rather than one controlling factor. (*Reid*, 136 Ill. 2d at 54-55.) Among the factors to be weighed in this decision are defendant's intellectual ability and his familiarity with the English language and his age, education and experience. (*Bernasco*, 138 Ill. 2d at 365.) A reviewing court will not disturb a trial court's ruling on a motion to suppress evidence unless it is against the manifest weight of the evidence. *Bernasco*, 138 Ill. 2d at 368.

■ After a careful review of the record we cannot conclude that the trial court's decision was correct. In the case *sub judice*, there was ample credible evidence which proved that defendant was fully advised of the fact that the person to whom he was speaking was an attorney working against defendant, and not defendant's lawyer. First, defendant was hardly a stranger to the American criminal justice system, having been previously arrested and having had a public defender appointed for him. Second, our research into this matter confirms that the best translation for "*abogado para el estado*" is "attorney for the State" not "attorney from the State" or "attorney of the State." This translation coupled with the introduction that was given for Kinnerk apprised defendant that Kinnerk was not an assistant public defender, but that he was working with

the police against him. It is important to point out here that at no time were Spanish terms for "public defender" or "attorney for the indigent" ever used with regard to Kinnerk. Finally, there is no question that defendant was apprised in Spanish of his rights, both orally and in writing, and acknowledged his understanding of them. Thus, when looking at the totality of these circumstances, we are led to the conclusion that the State met its burden.

In light of the foregoing, the order of the circuit court of Cook County is reversed and this cause is remanded for further proceedings not inconsistent with the views contained herein.

Reversed and remanded.

GREIMAN, P.J., and RIZZI, J., concur.