731 N.E.2d 358 (2000)
314 Ill. App.3d 64
246 Ill.Dec. 830
In re M.W., a Minor (The People of the State of Illinois, Petitioner-Appellant,
v.
M.W., Respondent-Appellee).
No. 1-99-4242.
Appellate Court of Illinois, First District, First Division.
June 5, 2000.
*359 State's Attorney of County of Cook, Chicago (Richard A. Devine, Renee Goldfarb, Jon J. Walters, Katherine Blakey Cox, of counsel), for Appellant.
Northwestern Legal Clinic, Chicago (Angela D. Daker, William Barnes, Steven A. Drizin, Thomas F. Geraghty, Anthony Hill (Law Student), Amanda Whalen (711 Law Student), of counsel), for Appellee.
Justice GALLAGHER delivered the opinion of the court:
The sole issue in this appeal is whether respondent, M.W., made a knowing and intelligent waiver of his Miranda rights. Respondent was arrested on August 16, 1997, and charged with first-degree murder and aggravated arson. The State alleged that, on August 15, 1997, respondent set fire to an apartment building located at 7108 South Rhodes which resulted in the death of a woman, Zulean Wilson. While in custody, respondent made incriminating oral statements. Before trial, respondent filed a motion to suppress the statements on the grounds that his statements (1) were involuntary; and (2) were not made after a knowing and intelligent waiver of his Miranda rights. The trial court, concluding that respondent did not make a knowing and intelligent waiver of his Miranda rights, suppressed respondent's incriminating statements that he made while in custody. The State appeals that decision.

STANDARD OF REVIEW
Until recently, the proper standard of review in Illinois for determining whether a confession was voluntary was the manifestly erroneous standard. See People v. Oaks, 169 Ill.2d 409, 447, 215 Ill.Dec. 188, 662 N.E.2d 1328, 1345 (1996). Recently, however, the Illinois Supreme Court, noting that the voluntariness of a confession presents a mixed question of law and fact, held that the ultimate question of the voluntariness of a confession is subject to de novo review. In re G.O., 191 Ill.2d 37, 245 Ill.Dec. 269, 727 N.E.2d 1003 (2000). The court's decision was based upon the rationale explained in Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and United States v. D.F., 115 F.3d 413 (7th Cir.1997), which will be discussed later. In view of this recent supreme court case, the parties disagree on which standard of review applies in the instant case.
Subsumed within the question of whether a statement is voluntary, there has always been a two-part analysis, the first part of which concerns itself with the issue of voluntariness within the context of federal constitutional concerns and the second part of which considers whether the Miranda waiver which produced the otherwise "voluntary" statement was knowing and intelligent[1]. See, e.g., People v. Bernasco, 138 Ill.2d 349, 150 Ill.Dec. 155, 562 N.E.2d 958 (1990) (even though defendant's confession was "voluntary" within the meaning of the fifth and fourteenth amendments (U.S. Const., amends. V, XIV), defendant's voluntary waiver of Miranda rights was invalid because it was not knowing and intelligent). It is clear that an inquiry into a Miranda waiver has "`two distinct dimensions'; (1) whether there was a free, uncoerced choice and (2) whether there was awareness of the right and the consequences of abandoning it. [Citations.]" Bernasco, 138 Ill.2d at 354, 150 Ill.Dec. 155, 562 N.E.2d at 960. Although the Bernasco court was addressing *360 the continued viability of the second requirement that a waiver be knowing and intelligent, the court explained that "[t]here remains a world of difference between voluntariness and intelligent knowledge." Bernasco, 138 Ill.2d at 358, 150 Ill.Dec. 155, 562 N.E.2d at 962.
We believe that, although we now review de novo the ultimate question of the voluntariness of a confession, the issue of whether a Miranda waiver was knowingly and intelligently made remains subject to a discretionary standard of review, i.e., whether the trial court's findings on the issue were against the manifest weight of the evidence.
A federal court has summarized the rationale for the de novo standard of review of the ultimate issue of voluntariness, noting that "Ornelas and D.F. require an appellate court to apply rigorous review of lower court decisions where there is a compelling need for uniformity and clarity in the application of legal principles across courts. [Citations.]" In re Rovell, 194 F.3d 867, 871 (7th Cir.1999). As our supreme court explained:
"A de novo standard of review ensures that our courts of review maintain and clarify the legal principles governing confessions. This, in turn, allows our reviewing courts to develop a uniform body of precedent that will enable police officers to determine, before attempting to obtain confession, what behavior is constitutionally permissible." G.O., 191 Ill.2d at 49-50. 245 Ill.Dec. 269, 727 N.E.2d 1003.
We agree with respondent that this rationale for de novo review of voluntariness determinations does not apply in the instant case, where the issue of whether respondent made a knowing and intelligent waiver of his Miranda rights turns on the capacity of the respondent, not the conduct of the police.
We find additional support for this discretionary standard in the Illinois Supreme Court's own analysis in G.O. The G.O. court noted that the Supreme Court in Ornelas had "cautioned * * * that findings of historical fact should be reviewed only for clear error and that reviewing courts must give due weight to inferences drawn from those facts by the fact finder." G.O., 191 Ill.2d at 47-48, 245 Ill.Dec. 269 727 N.E.2d 1003, citing Ornelas, 517 U.S. at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920. The court, reiterating this principle, further noted that the seventh circuit, similar to the Supreme Court in Ornelas, had also "emphasized that `the determination of the historical facts of the case are the proper domain of the trial court and that our review of its findings in that regard will be for clear error.'" G.O., 191 Ill.2d at 49, 245 Ill.Dec. 269, 727 N.E.2d 1003, quoting D.F., 115 F.3d at 419. The G.O. court explained that although the ultimate question of whether a confession was voluntary is reviewed de novo, a reviewing court nonetheless shall "accord great deference to the trial court's factual findings, and * * * reverse those findings only if they are against the manifest weight of the evidence." G.O., 191 Ill.2d at 50, 245 Ill. Dec. 269, 727 N.E.2d 1003.
As in the present case, the respondent in G.O. asserted that he did not understand his Miranda rights, although in contradistinction to the present case, the trial court there specifically found that the respondent understood those rights. In addressing this claim, the Illinois Supreme Court, although adopting a de novo standard of review on the ultimate issue of the voluntariness of the confession, specifically applied the manifest weight of the evidence standard to the trial court's finding that the respondent understood his Miranda rights. The G.O. court clearly stated as follows: "[A]fter reviewing the record, we are unable to conclude that [the trial court's finding that respondent understood his Miranda rights] is against the manifest weight of the evidence." (Emphasis added.) In re G.O., 191 Ill.2d at 56, 245 Ill.Dec. 269, 727 N.E.2d 1003. Thus, with respect to the subissue of whether a confession was knowing and intelligent, *361 i.e., whether an individual understood his Miranda rights, the court in G.O. retained the discretionary standard. The necessary implication of this procedure is that the determination of whether a Miranda waiver was knowing and intelligent is a question of fact for the trial court. Our supreme court has previously acknowledged this principle. Bernasco, 138 Ill.2d at 367, 150 Ill.Dec. 155, 562 N.E.2d at 966 ("Whether defendant knowingly and intelligently waived his Miranda rights and gave his confession remains the key factual question here." (Emphasis added)).
In sum, the recent Illinois Supreme Court decision of In re G.O., 191 Ill.2d 37, 245 Ill.Dec. 269, 727 N.E.2d 1003 (2000), does not require de novo review of the trial court's determination that respondent did not make a knowing and intelligent waiver of his Miranda rights. The discretionary standard applied to this particular subissue of the voluntariness of a confession remains intact. Thus, while the ultimate question of whether respondent's confession was voluntary is subject to de novo review, we shall first consider whether the trial court's finding that respondent's Miranda waiver was not made knowingly and intelligently was against the manifest weight of the evidence.[2]
ANALYSIS
With regard to voluntariness, a confession made by a juvenile is generally subject to the same scrutiny as that of a confession made by an adult defendant. People v. Morgan, 306 Ill.App.3d 616, 629-30, 239 Ill.Dec. 353, 713 N.E.2d 1203, 1213 (1999). Nevertheless, in the case of a juvenile who is interrogated in the absence of legal counsel, it has been explained that "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." (Emphasis added.) In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527, 561 (1967); see also People v. Prude, 66 Ill.2d 470, 6 Ill.Dec. 689, 363 N.E.2d 371 (1977); Morgan, 306 Ill.App.3d at 630, 239 Ill.Dec. 353, 713 N.E.2d at 1213. The proper test is whether, under the totality of the circumstances, the statement was made freely, without compulsion or inducement, with consideration given to the characteristics of the accused as well as the details of the interrogation. People v. Prim, 53 Ill.2d 62, 289 N.E.2d 601 (1972); In re Lashun H., 284 Ill.App.3d 545, 550, 219 Ill.Dec. 823, 672 N.E.2d 331, 335 (1996). Although "voluntariness" in the constitutional sense is distinct from the issue of whether a waiver was knowing and intelligent, the review of each issue includes many of the same factors, such as the individual's mental ability, his familiarity with the language, his age, his education and his experience. People v. Higgins, 239 Ill.App.3d 260, 271, 180 Ill.Dec. 443, 607 N.E.2d 337, 345, (1993).
The trial court heard extensive testimony relevant to the issue of whether respondent knowingly and intelligently waived his Miranda rights. In addition to the testimony from eight witnesses, the evidence consisted of stipulated testimony of five additional witnesses and a variety of exhibits and reports. After hearing all the testimony and considering all of the evidence, the trial court found that respondent did not make a knowing and intelligent waiver of his Miranda rights. We conclude that this finding was not against the manifest weight of the evidence.
At the time of his arrest, respondent was 13½ years old. When tested in January 1997, respondent had a full scale IQ of 54. When retested in March 1999, his full scale IQ was found to be 52. Respondent's IQ places him in the borderline mentally retarded range of intellectual functioning, indicating that, at the time he gave his statements, respondent was functioning at the cognitive level of a mentally *362 retarded adult. His ability to make decisions was severely limited because of his intellectual capacity.
In January 1997, respondent was reading and spelling at the level of a second grader. In January 1998, respondent needed special education services. At that time, it was discovered that respondent had a Level 3 learning disability, the second most severe learning disability a student can have. In March 1999, respondent's reading scores were only at third-grade level, seven years below grade level. Although respondent graduated from the eighth grade in 1999 while in the Cook County Juvenile Temporary Detention Center, it was only because of his special education status and the fact that he was already 15 years old.
Respondent has been evaluated numerous times for various purposes between 1997 and 1999. Respondent was evaluated by three doctors regarding his ability to comprehend and waive Miranda rights. Dr. John Murray, a psychologist from Forensic Clinical Services of the juvenile court, who had known respondent for three years and evaluated him on four separate occasions, testified that respondent's ability to understand Miranda rights was very limited.
Although respondent told Dr. Murray that he understood his rights, referring to his Miranda rights, the reason was that, since his incarceration in the detention center since August 1997, respondent had apparently met with law students on several occasions who instructed him on Miranda rights. Dr. Murray testified that respondent has the same concrete thought process that is characteristic of mentally retarded persons. As a result, respondent's thought process is very simplistic and tied to the obvious. Thus, respondent would most likely not have been able to assess the consequences of waiving his Miranda rights because of his inability, as a concrete thinker, to think in abstract terms.
We note that even had we reviewed this issue de novo, we would have to conclude that respondent's waiver was not knowing and intelligent. In addition to the evidence highlighted by the trial court in its order, the record reveals additional compelling evidence that respondent did not knowingly and intelligently waive his Miranda rights. The State's expert witness, Dr. Peter Fink, a psychiatrist, testified that respondent told him that he did not know that he could have a lawyer present before he talked to the police during his questioning. Moreover, the evidence showed that respondent did not even understand the meaning of the words in the Miranda warning. As our supreme court has explained, "if one lacks that ability, the repetition of the advice even accompanied by a statement of agreement indicates very little. [Citation.]" In re W.C., 167 Ill.2d 307, 334, 212 Ill.Dec. 563, 657 N.E.2d 908, 922 (1995). The evidence showed that respondent was unable to define what either the term "right" or the term "silent" meant. When Dr. Murray asked respondent to define the term "right," respondent responded "I have the right, a right to do something." Dr. Murray testified that when he pressed respondent on that issue, respondent was "unable to explain the meaning of a right." Also, after asking respondent what the term "silent" meant and after giving him the cue of the song "Silent Night" as an example to elicit a meaning from him, respondent replied as follows: "Like silent, like you said, Christmas song. Mean like what they said, some stuff. I forget."
As our supreme court has explained:
"If intelligent knowledge in the Miranda context means anything, it means the ability to understand the very words used in the warnings. It need not mean the ability to understand far-reaching legal and strategic effects of waiving one's rights, or to appreciate how widely or deeply an interrogation may probe, or to withstand the influence of stress or fancy; but to waive rights intelligently and knowingly, one must at least understand basically what those rights encompass *363 and minimally what their waiver will entail. Here, defendant was found not to understand fundamental terms contained in the Miranda warnings of his rights, not to have been able to form an intent to waive those rights, and not to have a normal ability to understand questions and concepts. Such findings, if borne out by the evidence, are sufficient to warrant the conclusion that defendant did not waive his Miranda rights knowingly and intelligently, and hence to justify suppressing his confession. [Citations.]" (Emphasis added.) People v. Bernasco, 138 Ill.2d at 363, 150 Ill.Dec. 155, 562 N.E.2d at 964 (1990).
Similar to the respondent in Bernasco, respondent here did not waive his Miranda rights knowingly and intelligently. A valid Miranda waiver requires "`both an uncoerced choice and the requisite level of comprehension.' [Citation.]" (Emphasis in original.) Bernasco 138 Ill.2d at 354-55, 150 Ill.Dec. 155, 562 N.E.2d at 960. Thus, it is clear that once a reviewing court concludes that a trial court's finding on whether a Miranda waiver was intelligent and knowing was not against the manifest weight of the evidence, the de novo review on the ultimate question of voluntariness need proceed no furthersuch a confession is not voluntary. This is so despite the fact that the confession could have been "voluntary" in the federal constitutional sense based upon the appropriate and adequate conduct of the police in satisfying constitutional safeguards such as reading Miranda rights, attempting to contact a juvenile's parent, providing a youth officer and not mistreating the accused. We therefore conclude that respondent's statements were not voluntary, and We affirm the trial court's order suppressing respondent's confession.
Affirmed.
RAKOWSKI and GREIMAN, JJ., concur.
NOTES
[1] The record here shows that the trial court undertook a two-part analysis. The trial court first found that the State fully complied with the constitutional requirements of advising the respondent of his rights, the respondent waived those rights and, therefore, the confession was voluntary for federal constitutional purposes. The court then separately considered whether the respondent's waiver of Miranda rights was "knowing and intelligent." The trial court ultimately concluded that, although respondent's statement may have been "voluntary" in the federal constitutional sense, because the waiver of his Miranda rights was not knowing and intelligent, respondent's statements were not voluntary.
[2] At this point in our analysis, we shall presume that the waiver, with respect to the actions taken by the State and the trial court's findings in that regard, was voluntary in the federal constitutional sense.