NO. 4-05-0692          Filed 2/15/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from
          Plaintiff-Appellant,          )   Circuit Court of
          v.                            )   Vermilion County
JEREMY L. LOEWENSTEIN,                  )   No. 05CF108
          Defendant-Appellee.           )
                                        )   Honorable
                                        )   Michael D. Clary,
                                        )   Judge Presiding.
_____

JUSTICE TURNER delivered the opinion of the court:

In February 2005, the State charged defendant, Jeremy L. Loewenstein, with single counts of aggravated discharge of a firearm and unlawful possession of a weapon by a felon.  In July 2005, defendant filed a motion to suppress statements, which the trial court granted in part and denied in part.

On appeal, the State argues the trial court erred in suppressing certain statements made by defendant to the police.  We reverse and remand for further proceedings.

I. BACKGROUND

In February 2005, the State charged defendant Loewenstein and codefendant Donald Huerta by information with one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2004)), alleging defendants knowingly discharged a firearm in the direction of another person.  The State also charged defendants with one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2004)), alleging defendants, both of whom had been convicted of a felony, knowingly possessed

a handgun. Defendant Loewenstein pleaded not guilty.

In May 2005, defendant filed a motion to suppress evidence, which the trial court denied. In July 2005, defendant filed a motion to suppress certain statements made to the police. Defendant stated he was taken into custody on February 20, 2005, and interrogated by police officers. In response to questions, defendant allegedly gave incriminating statements. Defendant claimed the statements were involuntary and made without a knowing and intelligent waiver of his right to remain silent and his right to an attorney as he was not advised of those rights prior to interrogation. Defendant also claimed statements made on February 21, 2005, should be suppressed as having been given as a result of the initial improper interrogation, thereby amounting to fruit of the poisonous tree.

In August 2005, the trial court conducted a hearing on the motion to suppress statements. Danville police detective Bruce Stark testified he obtained defendant's consent to search a safe in defendant's residence at 12:25 p.m. on February 20, 2005. Stark questioned defendant about the contents of the safe but did not read him any <u>Miranda</u> warnings (<u>Miranda v. Arizona</u>, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)). Stark's police report, admitted as defendant's exhibit No. 3, summarized the interview as follows:

> "The reporting officer[,] Bruce Stark[,]
> used a Danville Police Dept. consent[-]to[-]
> search form with Jeremy Loewenstein. Det.

Stark filled out the form and it was read to Jeremy. He was asked if he understood the form and he stated 'Yes.' Det. Stark asked Jeremy for consent to [a] search of a blue Sentry safe that was located in his bedroom.

Jeremy stated the safe belonged to a guy named Ivan who used to stay with him. Ivan got out of prison and moved in with Jeremy. Jeremy said he forgot what Ivan's last name was even with Ivan living with him. Jeremy stated Ivan got the safe to keep his personal papers in it. When Ivan moved out a couple of months ago, the safe was left at Jeremy's.

Jeremy stated Lupe Perez came to his house and he had a [9-millimeter] handgun that didn't work. Lupe Perez kept the magazine and Jeremy said he put the gun in the safe. Jeremy was asked if he knew he was a convicted felon and he[,] Jeremy[,] said 'Yes.' Jeremy said he was going to take the gun to a man's house on Perrysville Road that works on guns in his garage. Jeremy said he just never got around to doing that. Jeremy said that his wife Nicole is also a convicted felon, but she had no idea what was in the safe.

Jeremy said in the blue Sentry safe was a blue steel [9-millimeter] handgun and some extra bullets. Jeremy said he doesn't know where the handgun came from other than Lupe Perez brought it to him to try and fix.

Jeremy said the gun hasn't been fired and there is no magazine at his house for the gun.

Jeremy admitted to knowing the gun was there before the safe was open. Jeremy said that Ivan left the safe there and abandoned it and he began using it. Jeremy said there was nothing of Ivan's still in the safe and Ivan moved out in December of 2004.

The blue Sentry safe was put on evidence tag [No.] 95613.

See completed consent[-]to[-]search form for the blue Sentry safe."

Detective Stark stated he and Detective Gene Woodard then met with defendant at approximately 12:45 p.m. on February 20, 2005, in an interview room at the public safety building. Stark advised defendant of his Miranda rights and presented him with a waiver-of-rights form. Defendant indicated he understood his rights, put his initials next to the listed rights, and signed the waiver form. During the 30-minute interview, Stark stated he did not threaten defendant and asked him about a

- 4 -

shooting involving Roy Delarosa.  Defendant stated he was not present at the shooting.

On February 21, 2005, Stark stated he and Detective Keith Garrett interviewed defendant at around 11:14 a.m. at the public safety building.  Officers had by this time opened the safe and retrieved the handgun.  The officers presented defendant with a waiver-of-rights form, and defendant initialed and signed the form indicating he understood his rights.  Stark stated he did not threaten defendant or promise him anything during the 30-minute interview.  Stark's police report, admitted as People's exhibit No. 3, summarized the interview as follows:

"The reporting officers[,] Bruce Stark & Keith Garrett[,] met with Jeremy Loewenstein and he was asked about the handgun.  Jeremy was asked where the clip-magazine was for the [9-millimeter] handgun.  Jeremy stated Lupe Perez has it, as the handgun was his.  Jeremy said that he was holding the gun for Lupe Perez and he was to take it to have it repaired.

Jeremy Loewenstein said he did forget to tell Det. Stark one thing yesterday and that was Nicole[,] his wife[,] when she came home[,] answered the door when someone knocked.  Jeremy said that Nicole said it was Hugo Torres, Greg Acuna, and one guy she

- 5 -

didn't know.  She told them Jeremy was in bed sick[,] and they never came in.

Jeremy Loewenstein also said he told the officer that the guy living with him was possibly Ivan Brown, but since he has thought overnight, he wasn't sure of the last name and he didn't want to tell the officer the wrong name.  He still said the guy[']s first name was Ivan and they called him 'Little Man' in prison and he was paroled to Jeremy's house, but Jeremy couldn't remember Ivan's last name.

Jeremy said *** he did in fact handle the gun that was in the blue safe, which the officers took from his home."

During arguments on the motion, the State conceded the statements given during the first interview on February 20, 2005, should be suppressed because of the officer's failure to advise defendant of his Miranda rights.  The trial court suppressed the first statement.  The court declined to suppress the second interview of 12:45 p.m. on February 20, 2005, finding it did not concern the contents of the safe.  The court found no evidence that any of the statements were not voluntarily given and also found no showing of any threats, force, or coercion.

As to the third interview, the trial court stated as follows:

"And then we have the conversation February 21st at 11:14 a.m., that's also sought to be suppressed. And to a very great extent it would appear that that conversation covers much of the same ground that was volunteered by the defendant when he was asked for a consent to search the safe. He talks about there not being a clip for the handgun, that it is a handgun, where he got [it], it was kind of covered both times. He was Mirandized on February 21st just before that conversation. It's the next day, so there's been about 24 hours passage of time. This conversation obviously has connections to the first conversation on February 20th before Miranda and I think it is linked to it. There has been a break, there's been a passage of time, a new Miranda, but I think the--the law in the past has covered those types of situations and I don't think that the law allows in an improper situation where police find things out without giving Miranda to then go back and remedy or try to cure the situation by [M]irandizing and questioning. To me it's obvious the police officers were not improperly trying to solicit information

from Mr. Loewenstein when they spoke with him to get the consent to search, but there was a conversation, and then the next day a continuation of that conversation, and as a result of the topics covered both times, the [m]otion to [s]uppress February 21st, 11:14 a.m., conversation is gonna be allowed for the reasons stated."

The State filed a certificate of substantial impairment and appealed the court's ruling pursuant to Supreme Court Rule 604(a) (see 210 Ill. 2d R. 604(a)).

## II. ANALYSIS

### A. Burden of Proof and Standard of Review

"Where a defendant challenges the admissibility of his confession through a motion to suppress, the State has the burden of proving the confession was voluntary by a preponderance of the evidence." People v. Braggs, 209 Ill. 2d 492, 505, 810 N.E.2d 472, 481 (2003), citing 725 ILCS 5/114-11(d) (West 2000). On review of a trial court's ruling on the voluntariness of a confession, the court's factual findings are accorded great deference and will be reversed only if they are against the manifest weight of the evidence. In re G.O., 191 Ill. 2d 37, 50, 727 N.E.2d 1003, 1010 (2000). However, the court's ruling on the ultimate question of whether the confession was voluntary is entitled to de novo review. People v. Morgan, 197 Ill. 2d 404, 437, 758 N.E.2d 813, 832 (2001).

- 8 -

B. The Admissibility of the Second Confession

In the case sub judice, Detective Stark did not read defendant his Miranda rights prior to his first confession on February 20, 2005, that he possessed a handgun. A short time later, Stark administered the Miranda warnings, but defendant made no incriminating statements. The next day, Stark gave the Miranda warnings before defendant admitted possessing the handgun.

The State does not argue the trial court erred in suppressing defendant's first inculpatory statement. Instead, the State argues the court erred in suppressing the second confession of February 21, 2005. Defendant argues the "question first-warn later" interrogation technique utilized here requires suppression of the second confession.

The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Similarly, the Illinois Constitution provides that "[n]o person shall be compelled in a criminal case to give evidence against himself." Ill. Const. 1970, art. I, §10. The rule set forth in Miranda requires suppression of statements made by a defendant in response to custodial interrogation unless police officers warn the defendant of certain rights, including the right to remain silent and the right to an attorney, and obtain a voluntary waiver of those rights. Miranda, 384 U.S. at 478-79, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.

In <u>Oregon v. Elstad</u>, 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985), the United States Supreme Court was confronted with the situation where a defendant makes inculpatory statements without the benefit of <u>Miranda</u> warnings and then repeats those statements after the warnings were given. In that case, police officers went to the defendant's home with an arrest warrant for the offense of burglary. <u>Elstad</u>, 470 U.S. at 300, 84 L. Ed. 2d at 226, 105 S. Ct. at 1288. One officer spoke to the teenage defendant's mother in the kitchen to explain the arrest warrant, while another officer spoke with the defendant in the living room. <u>Elstad</u>, 470 U.S. at 300-01, 84 L. Ed. 2d at 226-27, 105 S. Ct. at 1288-89. The defendant was informed the police believed he was involved in the burglary, and he acknowledged being at the scene of the crime. <u>Elstad</u>, 470 U.S. at 301, 84 L. Ed. 2d at 227, 105 S. Ct. at 1289. Officers transported the defendant to the police station, advised him of his <u>Miranda</u> rights for the first time, and obtained his confession. <u>Elstad</u>, 470 U.S. at 301, 84 L. Ed. 2d at 227, 105 S. Ct. at 1289.

On appeal, the Supreme Court considered whether "the Fifth Amendment requires the suppression of a confession, made after proper <u>Miranda</u> warnings and a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the defendant." <u>Elstad</u>, 470 U.S. at 303, 84 L. Ed. 2d at 228, 105 S. Ct. at 1290. The Supreme Court held the failure to give the defendant his <u>Miranda</u> warnings before his initial inculpatory statement did not require suppression of his

- 10 -

later warned confession at the police station.  <u>Elstad</u>, 470 U.S. at 318, 84 L. Ed. 2d at 238, 105 S. Ct. at 1298.

> "It is an unwarranted extension of <u>Miranda</u> to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period.  Though <u>Miranda</u> requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."  <u>Elstad</u>, 470 U.S. at 309, 84 L. Ed. 2d at 232, 105 S. Ct. at 1293.

The Supreme Court confronted the parameters of the "question first-warn later" technique in <u>Missouri v. Seibert</u>, 542 U.S. 600, 159 L. Ed. 2d 643, 124 S. Ct. 2601 (2004).  There, the defendant mother had a 12-year old son, Jonathan, afflicted with cerebral palsy, who died in his sleep.  <u>Seibert</u>, 542 U.S. at 604, 159 L. Ed. 2d at 650, 124 S. Ct. at 2605.  As the defendant feared charges of neglect based on bedsores on Jonathan's body, her two teenage sons and two friends devised a plan in her presence to conceal the death by burning down the mobile home

- 11 -

with Donald Rector, a mentally ill teenager, inside so as to avoid the appearance Jonathan was left unattended. Seibert, 542 U.S. at 604, 159 L. Ed. 2d at 650, 124 S. Ct. at 2605. The defendant's son and his friend set the fire, and Donald died in the blaze. Seibert, 542 U.S. at 604, 159 L. Ed. 2d at 650, 124 S. Ct. at 2605-06.

Five days later, police officers awakened the defendant at 3 a.m. in a hospital where her son was being treated for burns. Seibert, 542 U.S. at 604, 159 L. Ed. 2d at 650, 124 S. Ct. at 2606. An officer made the "'conscious decision'" to withhold Miranda warnings following her arrest. Seibert, 542 U.S. at 605-06, 159 L. Ed. 2d at 651, 124 S. Ct. at 2606. She was then taken to the police station and left in an interview room for 15 to 20 minutes. Seibert, 542 U.S. at 604, 159 L. Ed. 2d at 650, 124 S. Ct. at 2606. Thereafter, an officer questioned her without Miranda warnings for 30 to 40 minutes, squeezed her arm, and repeated, "'Donald was also to die in his sleep.'" Seibert, 542 U.S. at 605, 159 L. Ed. 2d at 650, 124 S. Ct. at 2606. The defendant then admitted she knew Donald was meant to die in the fire. Seibert, 542 U.S. at 605, 159 L. Ed. 2d at 651, 124 S. Ct. at 2606. After a 20-minute break, the officer gave the defendant Miranda warnings, obtained a signed waiver, and resumed questioning while confronting her with her prewarning statements. Seibert, 542 U.S. at 605, 159 L. Ed. 2d at 650, 124 S. Ct. at 2606. The defendant gave a second confession, which was "'largely a repeat of information ... obtained' prior to the

warning." Seibert, 542 U.S. at 606, 159 L. Ed. 2d at 651, 124 S. Ct. at 2606.

On appeal, a plurality of the Supreme Court held the second confession inadmissible because the officer's interrogation technique rendered the Miranda warnings ineffective. Seibert, 542 U.S. at 617, 159 L. Ed. 2d at 658, 124 S. Ct. at 2613 (plurality opinion of Souter, J., joined by Stevens, Ginsburg, and Breyer, JJ.). The plurality distinguished the police conduct in Elstad from the question-first interrogation technique by "treating the living room conversation as a good-faith Miranda mistake, not only open to correction by careful warnings before systematic questioning in that particular case, but posing no threat to warn-first practice generally." Seibert, 542 U.S. at 615, 159 L. Ed. 2d at 657, 124 S. Ct. at 2612. In contrast, the plurality opinion found the questioning in Seibert was "systematic, exhaustive, and managed with psychological skill." Seibert, 542 U.S. at 616, 159 L. Ed. 2d at 657, 124 S. Ct. at 2612. Further, the warned phase of questioning took place shortly after a break from the first interrogation, in the same place, and with the impression that it was a mere continuation of the earlier questioning. Seibert, 542 U.S. at 616-17, 159 L. Ed. 2d at 658, 124 S. Ct. at 2613.

To determine the admissibility of the second confession, the plurality advocated the following multifactor test:

> "The contrast between Elstad and this
> case reveals a series of relevant facts that

bear on whether Miranda warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first."  Seibert, 542 U.S. at 615, 159 L. Ed. 2d at 657, 124 S. Ct. at 2612.

Justice Kennedy concurred in the judgment in Seibert but wrote separately to state the admission of statements depends on whether "the circumstances would frustrate Miranda's central concerns and objectives."  Seibert, 542 U.S. at 619, 159 L. Ed. 2d at 659, 124 S. Ct. at 2614 (Kennedy, J., concurring).  Justice Kennedy found the interrogation technique employed in Seibert was designed to circumvent Miranda.  Seibert, 542 U.S. at 618, 159 L. Ed. 2d at 659, 124 S. Ct. at 2614 (Kennedy, J., concurring).  However, the plurality's multifactor test cut "too broadly" and might undermine the clarity of the rule set forth in Miranda.  Seibert, 542 U.S. at 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616 (Kennedy, J., concurring).  Justice Kennedy advocated a narrower test and would refuse to allow a postwarning confession where "the two-step interrogation technique was used in a calcu-

lated way to undermine the Miranda warning."  Seibert, 542 U.S.
at 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616 (Kennedy, J.,
concurring).

> "The admissibility of postwarning state-
> ments should continue to be governed by the
> principles of Elstad unless the deliberate
> two-step strategy was employed.  If the de-
> liberate two-step strategy has been used,
> postwarning statements that are related to
> the substance of prewarning statements must
> be excluded unless curative measures are
> taken before the postwarning statement is
> made.  Curative measures should be designed
> to ensure that a reasonable person in the
> suspect's situation would understand the
> import and effect of the Miranda warning and
> of the Miranda waiver."  Seibert, 542 U.S. at
> 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616
> (Kennedy, J., concurring).

Absent a majority opinion as in Seibert, a holding of
the Supreme Court is viewed as that position taken by the jus-
tices who concurred on the narrowest grounds.  Marks v. United
States, 430 U.S. 188, 193, 51 L. Ed. 2d 260, 266, 97 S. Ct. 990,
993 (1977); see also United States v. Ollie, 442 F.3d 1135, 1142
(8th Cir. 2006) ("Because Justice Kennedy provided the fifth vote
[in Seibert] and his concurrence resolved the case on narrower

- 15 -

grounds than did the plurality, it is his reasoning that rules the present case").

Courts confronted with similar situations have found Elstad continues to apply unless police officers make a deliberate attempt to undermine the Miranda warning. See People v. Lopez, 367 Ill. App. 3d 817, 825, 856 N.E.2d 471, 478 (2006) ("courts should depart from the Elstad analysis of voluntariness only where the police set out deliberately to withhold Miranda warnings until after a confession has been secured"); United States v. Torres-Lona, 491 F.3d 750, 758 (8th Cir. 2007) (postwarning Miranda statement was governed by Elstad, not Seibert, as failure to warn was not deliberate); United States v. Nunez-Sanchez, 478 F.3d 663, 668-69 (5th Cir. 2007) (as no evidence indicated officers made a deliberate attempt to utilize a two-step interrogation strategy, Elstad applied); United States v. Stewart, 388 F.3d 1079, 1090 (7th Cir. 2004) ("Where the initial violation of Miranda was not part of a deliberate strategy to undermine the warnings, Elstad appears to have survived Seibert").

With this review of the pertinent case law in mind, we find the facts in this case require us to follow Elstad, as Seibert is distinguishable. Based on a review of the record, no inference can be made that Stark deliberately employed a two-step interrogation technique to undermine the warnings set forth in Miranda or to evade its requirements. The dissent's view of the facts completely ignores the purpose of the first interrogation,

*i.e.*, to obtain a consent to search. Nothing in the evidence indicated Detective Stark goaded, coerced, forced, or threatened defendant into making a statement that officers would then turn around and use against him once they administered Miranda warnings. Instead, Stark testified the conversation concerning the contents of the safe was in conjunction with defendant's consent to search. No evidence indicated this questioning was "systematic, exhaustive, and managed with psychological skill." Seibert, 542 U.S. at 616, 159 L. Ed. 2d at 657, 124 S. Ct. at 2612 (plurality opinion). In fact, the trial court found it "obvious the police officers were not improperly trying to solicit information from [defendant] when they spoke with him to get the consent to search." Because the failure to warn defendant was not deliberate, Seibert is not implicated.

As Elstad applies, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." Elstad, 470 U.S. at 318, 84 L. Ed. 2d at 238, 105 S. Ct. at 1298.

Defendant was given Miranda warnings prior to the February 21, 2005, statements. He placed his initials next to the warnings on the waiver-of-rights form and in signing it indicated he made the waiver freely and voluntarily and without any force, promises, or threats. There was no indication police

officers used coercive tactics to obtain the second confession. Further, the trial court found the statements were voluntary. Under the circumstances here, "[a] subsequent administration of <u>Miranda</u> warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." <u>Elstad</u>, 470 U.S. at 314, 84 L. Ed. 2d at 235, 105 S. Ct. at 1296. As defendant voluntarily gave his February 21st statement, <u>Miranda</u> does not require suppression.  Thus, the court erred in granting the motion to suppress.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded for further proceedings.

McCULLOUGH, J., concurs.

APPLETON, P.J., dissents.

PRESIDING JUSTICE APPLETON, dissenting:

I dissent because the majority lays the burden of proof on defendant rather than the State. The majority says: "[W]e find the facts in this case require us to follow Elstad, as Seibert is distinguishable. Based on a review of the record, no inference can be made hat Stark deliberately employed a two-step interrogation technique to undermine the warnings set forth in Miranda or to evade its requirements." Slip op. at 16. When penning those lines, the majority seems to have forgotten what it said at the beginning of its analysis: under section 114-11(d) of the Code of Criminal Procedure of 1963, "[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State." Slip op. at 8, quoting Braggs, 209 Ill. 2d at 505, 810 N.E.2d at 481, citing 725 ILCS 5/114-11(d) (West 2006). The lack of evidence that the two-step interrogation was a deliberate attempt to thwart Miranda is significant only if defendant had the burden of proving it was a deliberate attempt to thwart Miranda. Defendant had no such burden. The absence of an inference of deliberateness is significant only if defendant had the burden of proving that inference. Instead, the majority should be asking if the State presented any evidence that the two-step interrogation procedure was inadvertent. The State presented no evidence of inadvertence. Placing the burden on defendant violates section 114-11(d).

Section 114-11 speaks of the voluntariness of a confession (725 ILCS 5/114-11 (West 2006)), and, therefore, at first

- 19 -

glance, the statute might seem inapplicable.  Defendant does not allege his second confession was involuntary but only that the police obtained it in violation of <u>Miranda</u>.  Because <u>Miranda</u>'s prophylactic rule sweeps more broadly than the fifth amendment (U.S. Const., amend. V), a violation of <u>Miranda</u> does not necessarily entail compulsion.  <u>Elstad</u>, 470 U.S. at 306-07, 84 L. Ed. 2d at 230-31, 105 S. Ct. at 1291-92.  Even "unwarned statements that are otherwise voluntary within the meaning of the [f]ifth [a]mendment must nevertheless be excluded from evidence under <u>Miranda</u>."  <u>Elstad</u>, 470 U.S. at 307, 84 L. Ed. 2d at 231, 105 S. Ct. at 1292.  The supreme court has interpreted section 114-11, however, as applying to <u>Miranda</u> cases, even though the standards of <u>Miranda</u> "go beyond what has been considered 'involuntary in traditional terms.'"  <u>People v. Costa</u>, 38 Ill. 2d 178, 182, 230 N.E.2d 871, 873 (1967), quoting <u>Miranda</u>, 384 U.S. at 457, 16 L. Ed. 2d at 713, 86 S. Ct. at 1618; see also <u>People v. Longoria</u>, 117 Ill. App. 3d 241, 252, 452 N.E.2d 1350, 1357 (1983) (applying section 114-11 to a <u>Miranda</u> objection); <u>People v. Hughes</u>, 181 Ill. App. 3d 300, 303, 536 N.E.2d 71, 72 (1989) (same).  "The word 'voluntary' *** has become a word of art in a constitutional sense, and the references in section 114-11 to an 'involuntary' confession and to a confession 'not voluntarily made' must be read as embracing the constitutional standards that govern admissibility."  <u>Costa</u>, 38 Ill. 2d at 183, 230 N.E.2d at 874.

Thus, section 114-11 applies to this case, and under subsection (d), the State had the burden of proving the admissi-

bility of defendant's second confession. (It conceded the inadmissibility of the first confession on the ground of noncompliance with Miranda.) Indeed, the prosecutor expressly acknowledged, at the beginning of the hearing, that the State had the burden of proof. To prove the admissibility of the second confession, the State had to prove what Seibert required, namely, that the two-step interrogation procedure was inadvertent rather than deliberate--or, if it was deliberate, adequate curative measures intervened before defendant made his postwarning statement. Seibert, 542 U.S. at 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616 (Kennedy, J., concurring).

The circuit court stated from the bench: "To me[,] it's obvious the police officers were not improperly trying to solicit information from Mr. Lowenstein when they spoke with him to get the consent to search ***." Given the record before us, that statement is inexplicable. Of course the police improperly tried to solicit information from defendant in the first interview. They not only improperly tried to solicit information from him; they improperly did solicit information from him. That is why the State conceded the first confession was inadmissible under Miranda, and that is why the court ruled it was inadmissible.

Detective Stark was the only witness to testify in the hearing, and his testimony was uncontested and unrebutted. He testified that at the time of the first confession, defendant "had already been arrested and was in the interview room." That

- 21 -

fact alone makes Elstad distinguishable. In Elstad, "the offi-cer's initial failure to warn was an 'oversight' that 'may have been the result of confusion as to whether the brief exchange [in the living room] qualified as a 'custodial interrogation.'" Seibert, 542 U.S. at 614, 159 L. Ed. 2d at 656, 124 S. Ct. at 2611 (plurality), quoting Elstad, 470 U.S. at 315, 84 L. Ed. 2d at 236, 105 S. Ct. at 1296; see also Seibert, 542 U.S. at 619, 159 L. Ed. 2d at 659, 124 S. Ct. at 2614 (Kennedy, J., concur-ring). In the present case, defendant was under arrest and sitting in the police station when the police interrogated him without Miranda warnings. Defense counsel asked Stark:

"Q. So the--conversation at 12:20 [p.m. on February 20, 2005,] involved the contents of the safe and his knowledge of the contents of the safe[,] is that correct?

A. Yes.

Q. And you asked him questions[,] and he responded[,] is that correct?

A. Yes."

Of all people, Stark best knew why he used the two-step interrogation procedure, but he never offered any explanation in the hearing. Unless the majority's citation of section 114-11(d) is merely decorative, the silence of the record on this crucial point should be fatal to the State's appeal. For all we know, Stark was following the Illinois Police Law Manual, condemned in Seibert. The manual says: "'[O]fficers may conduct a two-stage

interrogation.  ***  At any point during the pre-<u>Miranda</u> interrogation, usually after arrestees have confessed, officers may then read the <u>Miranda</u> warnings and ask for a waiver.  If the arrestees waive their <u>Miranda</u> rights, officers will be able to repeat any <u>subsequent</u> incriminating statements later in court'" (emphasis in original) (<u>Seibert</u>, 542 U.S. at 609-10, 159 L. Ed. 2d at 653, 124 S. Ct. at 2608-09, quoting Police Law Institute, Illinois Police Law Manual 83 (January 2001-December 2003)).

The State failed to come forward with any evidence that the two-stage interrogation was not a deliberate attempt to subvert <u>Miranda</u>.  The second confession dealt with the same subject matter as the first.  Were there sufficient curative measures?  The circuit court mentioned the passage of time--24 hours--between the first and second confessions, but, given its decision to suppress the second confession, the court evidently did not deem those 24 hours as a sufficient curative measure to ensure that a reasonable person in defendant's situation would understand the import and effect of the <u>Miranda</u> warnings and of the <u>Miranda</u> waiver.  <u>Seibert</u>, 542 U.S. at 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616 (Kennedy, J., concurring).  Whether a <u>Miranda</u> waiver was knowing and intelligent is a question of fact (<u>People v. Bernasco</u>, 138 Ill. 2d 349, 367, 562 N.E.2d 958, 966 (1990); <u>People v. Kolakowski</u>, 319 Ill. App. 3d 200, 212, 745 N.E.2d 62, 74 (2001); <u>In re M.W.</u>, 314 Ill. App. 3d 64, 68, 731 N.E.2d 358, 361 (2000)), and, as the majority says, we should give great deference to the court's findings of fact, upholding

them unless they are against the manifest weight of the evidence. "[A] substantial break in time <u>and</u> circumstances between the prewarning statement and the <u>Miranda</u> warning <u>may</u> suffice in most circumstances" as a curative measure. (Emphases added.) <u>Seibert</u>, 542 U.S. at 622, 159 L. Ed. 2d at 661, 124 S. Ct. at 2616 (Kennedy, J., concurring). A rational trier of fact would not necessarily have to regard 24 hours as a "substantial break in time." Even if 24 hours were, as a matter of law, a "substantial break in time," there was no "substantial" change of "circumstances": defendant was still in jail, and the same police officer, Stark, was interrogating him about the contents of the safe, as he did the day before. Because the State failed to carry its burden of proof--both as to the inadvertence of the two-stage interrogation procedure and the intervention of adequate curative measures--I would affirm the judgment.